IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

ARTHELLA WEBB,                    )
                                  )
              Plaintiff,          )
                                  )
      v.                          )  Case No. 04-0964-CV-W-REL
                                  )
JOHN E. POTTER, Postmaster        )
General, United States Postal     )
Service,                          )
                                  )
              Defendant.          )

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the court is defendant's motion for summary judgment
on the grounds that (1) plaintiff cannot establish a prima facie
case of either race or age discrimination, and (2) plaintiff
cannot show that the legitimate, nondiscriminatory reasons for
the actions of defendant were pretextual.  I find that plaintiff
has failed to establish a prima facie case of race discrimination
or age discrimination, and that plaintiff cannot establish that
the legitimate, nondiscriminatory reason for the adverse
employment action is a pretext for unlawful discrimination.
Therefore, defendant's motion for summary judgment will be
granted.

## I.   BACKGROUND

On October 21, 2004, plaintiff filed a complaint alleging
race discrimination and age discrimination, in violation of Title
VII.  Plaintiff alleges that he was denied re-certification to
work as a tractor-trailer driver when similarly-situated white

employees and younger employees were granted assistance in obtaining re-certification and were not forced to resign their employment as plaintiff was.

On December 18, 2006, defendant filed a motion for summary judgment arguing the above-listed issues. On February 12, 2007, plaintiff filed a response in opposition. On March 2, 2007, plaintiff filed exhibits which are cited in his response, and that same day the defendant filed its reply.

## II. *STANDARD FOR SUMMARY JUDGMENT*

Rule 56(c), Federal Rules of Civil Procedure, permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether there exists a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. American Academy of Family Physicians v. United States, 75 A.F.T.R.2d 95-1709 (W.D. Mo. 1995), aff'd 91 F.3d 1155 (8th Cir.

2

1996).  The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In a summary judgment analysis, a court must first consider whether there are any issues of fact.  If the only issues are issues of law, then summary judgment is appropriate.  Disesa v. St. Louis Community College, 79 F.3d 92, 94 (8th Cir. 1996).  If issues of fact are raised, a court must consider whether these issues are material to the outcome of the case.  Materiality is identified by the substantive law that is to be applied.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  Factual disputes that are collateral to the substantive law will not preclude summary judgment.  Id.

In addition to the requirement that a dispute of fact be material, the dispute must also be genuine.  A dispute of fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party.  Id. at 249.  When considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor.  Id. at 255.  If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted.  Id. at 249-250.

3

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This burden is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. Id. at 323. If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 474 U.S. at 248. The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

### III. UNCONTROVERTED FACTS

Below are the facts I find to be uncontroverted by the record before me. Any numbered fact without reference to the record has been offered by defendant and is undisputed by plaintiff.

1. Plaintiff is an African-American who was born on April 6, 1938, and who was 63 years old in July of 2002.

2. For several years prior to 2002, plaintiff had been employed as a tractor-trailer operator in the private business sector. He retired on July 31, 2000.

4

3.    In September 2001, plaintiff was hired by the United
States Postal Service ("USPS") as a tractor-trailer operator in a
"casual" employee status.

4.    Casual employment with the USPS involves a temporary
assignment to a job, working as a roustabout and filling in
wherever necessary.

> Plaintiff disputes this fact, stating "Plaintiff was
> not a casual employee with the USPS.  He was a tractor-
> trailer driver only."

> In support of this fact, defendant cites to plaintiff's
> deposition testimony:
> Q.   Can you explain to me what your understanding is what
>      it means to be a casual employee?
> A.   Well, just the temporary assignment of a job.
> (p. 8, lines 12-14).
> Q.   Did you have a specific route you were driving?
> A.   As a casual you worked in whatever spots available,
>      came available when needed.
> Q.   Okay.  So casual employees, they sort of fill in where
>      help --
> A.   Roustabout, so I filled in wherever was necessary to.
> (D. Ex. A, p. 9, lines 14-19).

> Plaintiff's citation to the very same pages and lines
> of his testimony, reprinted above, does not call into
> question the definition of a casual employee.  Plaintiff
> testified that he was hired as a tractor-trailer operator,
> and defendant's proposed undisputed fact number three states
> that plaintiff was hired as a tractor-trailer operator.
> There is no allegation that a casual employee was required
> to perform duties not associated with being a tractor-
> trailer operator.

> Based on the discussion above, I find that the
> defendant's proposed fact number four is undisputed.

5.    In 2002, plaintiff became a tractor-trailer operator in
a "transitional" employee status with the USPS.

6. A transitional employee is an upgrade from a casual employee but differs from a "full-time" career employee.

7. A transitional employee eventually may have the opportunity to become a full-time career employee in the regular work force for the USPS based on work performance and available open slots for full-time career employees.

8. However, transitional employees are deemed noncareer employees, are "hired for terms not to exceed 360 calendar days for each appointment," and do not have the same rights as full-time employees under the collective bargaining agreement between the USPS and the union.

9. With the exception of certain rural postal associates, noncareer employees (such as transitional employees) may not be reassigned to other positions within the USPS.

> Plaintiff disputes this fact. However, plaintiff merely states that he disputes this fact without citing anything in the record other than the exact evidence cited by defendant to prove this fact.

> Both parties cite to the United States Postal Service Employment and Placement Handbook, EL-312, § 234.5, which states as follows:
> > A rural carrier associate is the only noncareer employee who may be reassigned to another installation. . . .
> (D. Ex. F).

> A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment purposes.

6

Because defendant's citation to the Handbook supports this fact, and because plaintiff has pointed to nothing in the record to dispute this fact, I find that defendant's proposed fact number nine is undisputed.

10.  After coming to work for the USPS in 2001 as a tractor-trailer operator, plaintiff was never a full-time career employee.

11.  On March 27, 2001, plaintiff underwent triple coronary artery bypass surgery on the recommendation of his doctor.

12.  In order to operate a tractor-trailer for the USPS, plaintiff was required to hold a valid commercial driver's license ("CDL").

13.  In order to hold a valid CDL, plaintiff was required to be certified pursuant to Department of Transportation ("DOT") regulations.

14.  One set of DOT regulations, 49 C.F.R. §§ 391.41, et. seq., requires tractor-trailer operators to submit to and pass a physical examination every two years.

15.  Plaintiff's prior employers for whom he had operated a tractor-trailer had also required plaintiff to have a CDL and be certified under DOT regulations, including bi-annual physical examinations.

16.  Plaintiff's last DOT physical before coming to work for the USPS was in 2000.

17.  On July 18, 2002, the USPS arranged for plaintiff to be seen by doctors for purposes of undergoing his bi-annual DOT

7

physical.

18.  During the physical examination with the USPS doctors, plaintiff had scintigraphic findings regarding his heart. Scintigraphy is a diagnostic test in which a two-dimensional picture of a body radiation source is obtained through the use of radioisotopes.

19.  As a result of those abnormal findings, the USPS doctors temporarily declined to certify plaintiff under DOT regulations, but the USPS doctors told plaintiff that if he could bring in a normal stress test, they would certify him to drive a tractor-trailer.

20.  In response to the doctors' statement, plaintiff gave to the USPS a copy of a stress test he had undergone on May 30, 2002.

21.  The May 30, 2002, stress test was also abnormal, revealing a small localized area of ischemia.  Ischemia is an inadequate blood supply to a local area, generally due to factors in the blood vessels, with resultant damage or dysfunction of tissue.

> Plaintiff disputes this fact, citing the same portions of the record as defendant.
>
> The parties cite the deposition of plaintiff which reads as follows:
> Q.   I want to hand you what we've had marked as Deposition Exhibit No. 3.  And I want you to tell me if you can identify this as the report that was done from that stress test.
> A.   Yep, yes.

8

Q.   Okay.  If I could have you look at the last page of
     that report, the first finding is that there's a small
     localized area of ischemia mixed with scar in the
     distribution of the RCA [right coronary artery].  Did
     any of the doctors that you saw explain to you what
     that meant?
A.   Yeah, my doctor told me -- she told me herself this is
     what DOT had disqualified me on.
(D. Ex. A, p. 26, lines 2-14).

     The parties next cite to the scintigraphic report dated
May 30, 2002, which reads in relevant part as follows:
     The combined findings indicate the following:
     1.   Small localized area of ischemia mixed with scar
          in the distribution of the RCA [right coronary
          artery].
(D. Ex. K, p. 2).

     Finally, the parties cite to the declaration of J.
Ralph Payne, M.D., which reads as follows:
          I, Ralph Payne, M.D., am Senior Facility Medical
     Manager for Occupational Health Services, Inc.  I was
     the supervising physician for Hongfei Helen Li, M.D.,
     on July 18, 2002, when Dr. Li evaluated Arthella B.
     Webb, Jr., in conjunction with a Department of
     Transportation (DOT) commercial driver's fitness
     determination.
          Mr. Webb has a history of myocardial infarction
     [heart attack], requiring cardiac bypass surgery in
     March, 2001.  Based on his medical history and the
     results of a cardiac stress test completed on May 30,
     2002, and a resting EGK [sic], both of which documented
     ischemia, and were considered abnormal, Dr. Li
     appropriately temporarily disqualified Mr. Webb for DOT
     certification pending receipt of documentation from his
     personal physician that Mr. Webb had undergone a repeat
     stress test and repeat resting EKG, considered to be
     normal, and without evidence of cardiac ischemia.
          The issue is addressed in the Department of
     Transportation Federal Motor Carrier Safety
     Administration 49 CFR Part 391; Physical Qualifications
     of Drivers with Medical Examination Certificate --
     Federal Register/Volume 65, Number 194, Tuesday,
     October 5, 2000/Rules and Regulations -- specifically,
     page 59375, Cardiovascular Condition 391.41(b)(4).  In
     reference to Cardiovascular Condition, in the third
     paragraph it states:  "... it is suggested before a
     driver is certified that he/she have a normal resting

9

and stress electrocardiogram."

     Although supplemental information was provided by various physicians subsequent to July 18, 2002, Mr. Webb failed to submit reports documenting a normal repeat resting EKG and a normal repeat stress electrocardiogram. Based on the absence of the required information, Mr. Webb's temporary disqualified status was changed on August 15, 2002 to "does not meet standards."

     Neither I nor Dr. Li are familiar with any of the allegations referenced in Mr. Webb's February 6, 2003, EEO Investigative Affidavit.

(D. Ex. J).

    The evidence cited above by defendant supports the proposed fact. A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment purposes. Because defendant's citation to plaintiff's deposition testimony, the scintigraphic report, and the declaration of Dr. Payne supports this fact, and because plaintiff has pointed to nothing in the record to dispute this fact, I find that defendant's proposed fact number 21 is undisputed.

22. Because the USPS doctors felt that the newly produced stress test was also abnormal, they concluded that plaintiff did not meet DOT standards and was disqualified to operate a tractor-trailer. 49 C.F.R. § 391.43(f) states, "it is suggested that before a driver is certified that he or she have a normal resting and stress electrocardiogram."

23. Without DOT certification, the USPS could not and would not allow plaintiff to operate a tractor-trailer.

24. While plaintiff disagrees with the decision of the USPS doctors to not give him DOT certification, he does not believe

10

the decision of the USPS doctors was either race discrimination

or age discrimination.

Plaintiff disputes this fact, merely rewriting the proposed fact to read: "...but he does believe the decision of the USPS doctors was either race discrimination, age discrimination or disability discrimination." Plaintiff cites his own deposition, the same pages and lines as those cited by defendant, in support of his position.

The parties cite to the following portions of plaintiff's deposition:

Q.   Okay.  I have a couple of closing questions here: You've sued the Postal Service for race discrimination and age discrimination.  And I understand that part of that is you object to the fact that you were forced to resign and did not get a chance to get another job at the post office.  Is that right?

A.   That's right.

Q.   Are you also claiming race discrimination and age discrimination with regard to Dr. Li's decision to disqualify you?

A.   I didn't look at it as if that was a race discrimination.  My attitude about that is I just felt like she was put up to say that after talking with my doctor and discussing it with him and him telling her, by him being a cardiologist, that I was still qualified.  It wasn't a race discrimination.

Q.   Okay.  When you say she was put up to it, what do you mean by that?

A.   That's just the way it ran through my mind.  I just felt like she was told to do that because they were wanting to get rid of me because of my age and my race.

Q.   I just want to be clear:  So in this lawsuit when you say you were subjected to race discrimination and age discrimination, you're talking about the decision of the post office not to offer you another job when you were disqualified under the DOT physical?

A.   Right.

(D. Ex. A, p. 61, lines 22-25; p. 62, lines 1-25; p. 63, lines 1-2).

Plaintiff clearly testified that he did not believe the doctor's decision to disqualify him was based on age or race.  He testified that he believed the age and race

11

discrimination was based on the postal service's decision not to offer him another job once he was disqualified due to the DOT physical.

A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment purposes. Because defendant's citation to plaintiff's deposition testimony supports this fact, and because plaintiff has pointed to nothing in the record to dispute this fact, I find that defendant's proposed fact number 24 is undisputed.

25. On July 30, 2002, plaintiff met with USPS supervisors to discuss his failure to obtain DOT certification.

26. Plaintiff inquired if there was another position he could be reassigned to within the USPS, but the USPS supervisors did not offer any other position.

27. Because plaintiff was a transitional employee (but not a rural postal associate), he was not entitled to be reassigned to another position within the USPS.

Plaintiff disputes this fact. However, plaintiff merely states that he disputes this fact without citing anything in the record other than the exact evidence cited by defendant to prove this fact.

Both parties cite to the United States Postal Service Employment and Placement Handbook, EL-312, § 234.5, which states as follows:
          A rural carrier associate is the only noncareer employee who may be reassigned to another installation.
          . . .
(D. Ex. F).

A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party.

12

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment purposes. Because defendant's citation to the Handbook supports this fact, and because plaintiff has pointed to nothing in the record to dispute this fact, I find that defendant's proposed fact number 27 is undisputed.

28. At the conclusion of the meeting with the USPS supervisors, plaintiff signed a document entitled Resignation From the Postal Service.

Plaintiff disputes this fact. However, plaintiff merely states that he disputes this fact without citing anything in the record other than the exact evidence cited by defendant to prove this fact.

Both parties cite to plaintiff's deposition testimony, the declaration of Jerry Woodruff, and the Resignation form. Plaintiff testified during his deposition as follows:

Q. I'm going to hand you what we've marked as Deposition Exhibit No. 5. Do you recognize that document?
A. Yeah. I recognize my signature and everything, too, yes.
Q. Okay. So that is your signature that appears on Deposition Exhibit No. 5?
A. That's right.
Q. Okay. And this is a document that's titled Resignation From the Postal Service?
A. Uh-huh.
Q. Is that right?
A. Right.

(P. Ex. A, p. 35, lines 17-25; p. 36, lines 1-4).

The declaration of Jerry Woodruff reads as follows:
I am Jerry Woodruff, EAS 23, Manager, In-Plant Support, Kansas City, Missouri, Processing and Distribution Center. The address is 1700 Cleveland Ave., Kansas City, MO 64127. At the time of the alleged incident, I was and am still the Acting Manager, Transportation and Networks Systems. I was not directly a supervisor to Mr. Webb but was the Manager over his immediate Supervisors.
Mr. Webb was employed as a Transitional Employee (non-career) Tractor Trailer Operator. He worked a

13

flexible schedule, so he did not report to any one
supervisor, but worked for all Transportation
Supervisors on all tours.

To the best of my recollection, on July 18, 2002
he was sent to Dr. Paine, the USPS contract physician
at Occupational Health Services for re-certification of
his Department of Transportation, D.O.T. medical card.
He is required to pass a physical and be cleared in
order for his commercial driver's license to be valid.
He must possess a valid commercial driver's license in
order to drive a commercial vehicle.

On or about July 30, Mr. Webb came to the office.
I was not totally aware of the nature of his medical
problems, but knew he had not passed his D.O.T.
physical. I later found out that he had been
disqualified due to cardiac problems. He spent some
time on the telephone talking to Dr. Paine about the
situation. When he got done, he stated that since he
wasn't able to pass the physical and obtain a card, he
would have to quit. He was furnished with the proper
paperwork, completed and turned it in along with his
badge. He did not express any desire at that time to
pursue appeal or other possibilities.

At no time was I aware of any request by Mr. Webb
for any accommodations due to his physical conditions.
While I knew he was not happy about having to resign,
he never expressed a desire to do anything but drive a
truck. Even if he were to be reinstated today, he
would not be allowed to drive a commercial vehicle
until and unless he passed a physical and obtained a
valid medical card.

As for the other drivers, each case is handle on
it's [sic] own merit. The contract physician is
responsible for deciding whether or not a driver is
cleared. I am aware of two other full time career
drivers who have had cardiac issues. They were cleared
either by Dr. Paine or through subsequent appeals to
drive. I am not medically qualified to explain why
they were cleared and Mr. Webb was not.

(P. Ex. H)


The Resignation from the Postal Service form contains
the date July 30, 2002, plaintiff's printed name, his social
security number, his mailing address, his signature, and the
effective date of the resignation - July 30, 2002. There is
a box that says "Reasons for Resignation (Give specific
reasons(s) for your resignation. Avoid generalized reasons
such as "Ill Health," "Personal Reasons," etc. Use reverse

14

for additional remarks." This box remains blank.
(P. Ex. L)

    The evidence cited by defendant supports the proposed
fact. Although plaintiff "disagrees that at the conclusion
of the meeting with the USPS supervisors, [plaintiff] signed
a document entitled Resignation from the Postal Service",
the undisputed evidence establishes that he did sign the
form, and indeed he testified that he signed the form. This
fact will be considered undisputed.

29. Plaintiff was not forced to sign the resignation form,

he was not threatened, and he was not offered any inducement to

resign.

    Plaintiff apparently contests this proposed fact, as he
wrote in his response, "That Webb was 'forced to sign' the
resignation, and he was 'threatened' and USPS did offer Webb
'inducements' to resign." However, he again cited the very
same evidence as that cited by defendant in support of this
proposed fact.

    The parties cite plaintiff's deposition testimony and
the Declaration of Jerry Woodruff in support of and to
contest this fact.

    Plaintiff's deposition testimony was as follows:
Q.   Okay.  And did you voluntarily sign this document?
A.   Well, I wasn't forced to sign it.  I did sign it.  And
     I signed it simply because they took my badge, held me
     paycheck up, and was not going to let me come back to
     work.
Q.   Okay.  Did they threaten you if you didn't sign it?
A.   No.  It was just that I didn't feel - I'm a grown man.
     I didn't feel as if I'd be wanting to be sarcastic
     because of the feelings that I had about what was
     happening to me.  I thought since I wasn't going to be
     allowed to come back to work and I got to turn my badge
     in, I might as well sign this.  I didn't want to
     because I discussed it with him.  I told him that I
     don't think that I should sign this.
                        * * * * *
Q.   Okay.  Before we get on to what you found out later, at
     that meeting with Doug Meiser, did he threaten to
     withhold your last paycheck if you didn't sign this?
A.   No.

15

```
Q.   So there weren't any sort of inducements or threats
     with respect to--
A.   No.
Q.   --you signing this?
A.   No.
(D. Ex. A, p. 36, lines 10-25; page 37, lines 13-22).
```

The declaration of Jerry Woodruff reads as follows:

I am Jerry Woodruff, EAS 23, Manager, In-Plant Support, Kansas City, Missouri, Processing and Distribution Center.  The address is 1700 Cleveland Ave., Kansas City, MO 64127.  At the time of the alleged incident, I was and am still the Acting Manager, Transportation and Networks Systems.  I was not directly a supervisor to Mr. Webb but was the Manager over his immediate Supervisors.

Mr. Webb was employed as a Transitional Employee (non-career) Tractor Trailer Operator.  He worked a flexible schedule, so he did not report to any one supervisor, but worked for all Transportation Supervisors on all tours.

To the best of my recollection, on July 18, 2002 he was sent to Dr. Paine, the USPS contract physician at Occupational Health Services for re-certification of his Department of Transportation, D.O.T. medical card. He is required to pass a physical and be cleared in order for his commercial driver's license to be valid. He must possess a valid commercial driver's license in order to drive a commercial vehicle.

On or about July 30, Mr. Webb came to the office. I was not totally aware of the nature of his medical problems, but knew he had not passed his D.O.T. physical.  I later found out that he had been disqualified due to cardiac problems.  He spent some time on the telephone talking to Dr. Paine about the situation.  When he got done, he stated that since he wasn't able to pass the physical and obtain a card, he would have to quit.  He was furnished with the proper paperwork, completed and turned it in along with his badge.  He did not express any desire at that time to pursue appeal or other possibilities.

At no time was I aware of any request by Mr. Webb for any accommodations due to his physical conditions. While I knew he was not happy about having to resign, he never expressed a desire to do anything but drive a truck.  Even if he were to be reinstated today, he would not be allowed to drive a commercial vehicle until and unless he passed a physical and obtained a

16

valid medical card.

     As for the other drivers, each case is handle on
it's [sic] own merit.  The contract physician is
responsible for deciding whether or not a driver is
cleared.  I am aware of two other full time career
drivers who have had cardiac issues.  They were cleared
either by Dr. Paine or through subsequent appeals to
drive.  I am not medically qualified to explain why
they were cleared and Mr. Webb was not.
(P. Ex. H)

     The evidence cited by defendant supports the proposed
fact.  Although plaintiff responded by stating that he was
forced to sign the resignation, he was threatened and USPS
did offer him inducements to resign, plaintiff has failed to
cite to any evidence in the record to support this
allegation.

     A dispute of fact is considered genuine only if the
non-moving party has produced sufficient evidence such that
a reasonable jury could return a verdict for that party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
Merely denying a proposed fact without pointing to any
evidence in the record does not result in a proposed fact
being considered disputed for summary judgment purposes.
Because defendant's citation to the record supports this
fact, and because plaintiff has pointed to nothing in the
record to dispute this fact, I find that defendant's
proposed fact number 29 is undisputed.

30.  In September of 2002, plaintiff initiated an EEO

complaint based on his belief that he was subjected to race, age,

and disability discrimination.

31.  After completing the administrative stage of his EEO

complaint, plaintiff filed the present lawsuit in federal

district court alleging race discrimination (Count One) and age

discrimination (Count Two).

     Plaintiff does not dispute this fact; however, in his
response he states that he also alleged age discrimination
in count three.  There is no count three in plaintiff's
complaint.

32.  Plaintiff believes the decision of the USPS to not find him another position was race discrimination because he is aware of two other tractor-trailer drivers who failed their DOT physicals who were reassigned to different jobs in the USPS.

Plaintiff does not dispute this fact; however, in his response he states that he also believes the decision of the USPS to not find him another position was disability discrimination.

The evidence cited by both parties consists of plaintiff's deposition testimony which reads as follows:

Q.   With respect to race discrimination I want you to tell me every reason you believe that the actions of the post office were race discrimination in your case.
A.   Well, now, that simplifies it to me upon the circumstances that Jack West and the other guy that you're telling me about were given the opportunity to go on to somewhere else without being asked to sign a letter of resignation put the race discrimination into my mind, I guess.
Q.   Okay.  And that's because Mr. West was white?
A.   And the other guy was outside of a black race, too.
Q.   Okay.  Mr. Lajoie?
A.   Yeah.
(D. Ex. A, p. 46, lines 22-25; page 47, lines 1-11).

Although this testimony supports the proposed fact that plaintiff believes the decision of the USPS to not find him another position was race discrimination because he is aware of two other tractor-trailer drivers who failed their DOT physicals who were reassigned to different jobs in the USPS, it does not support plaintiff's allegation that he believes that decision was also the basis for disability discrimination.

33.  These two tractor-trailer operators were Jack West (whom plaintiff described as white) and Raymond Lajoie (whom plaintiff described as "Mexican").

34.  Unlike plaintiff, both Jack West and Raymond Lajoie were full-time career employees.

Plaintiff apparently disputes this fact, and his response repeats the defendant's proposed fact but alters it to state "That Webb and both Jack West and Raymond Lajoie were in the same class of employees."

Defendant cites plaintiff's deposition testimony and the declaration of Jerry Woodruff in support of this fact. Plaintiff's deposition reads as follows:

Q.  Do you know, were they full-time employees?
A.  Yes.
Q.  They were both full-time employees?
A.  Yes, all three of them was, yes, I do. (Plaintiff goes on to testify about a third person whose name he did not recall but had diabetes).

(D. Ex. A, p. 42, lines 8-24).

The declaration of Jerry Woodruff reads as follows:

I am Jerry Woodruff, EAS 23, Manager, In-Plant Support, Kansas City, Missouri, Processing and Distribution Center.  The address is 1700 Cleveland Ave., Kansas City, MO 64127.  At the time of the alleged incident, I was and am still the Acting Manager, Transportation and Networks Systems.  I was not directly a supervisor to Mr. Webb but was the Manager over his immediate Supervisors.

Mr. Webb was employed as a Transitional Employee (non-career) Tractor Trailer Operator.  He worked a flexible schedule, so he did not report to any one supervisor, but worked for all Transportation Supervisors on all tours.

To the best of my recollection, on July 18, 2002 he was sent to Dr. Paine, the USPS contract physician at Occupational Health Services for re-certification of his Department of Transportation, D.O.T. medical card. He is required to pass a physical and be cleared in order for his commercial driver's license to be valid. He must possess a valid commercial driver's license in order to drive a commercial vehicle.

On or about July 30, Mr. Webb came to the office. I was not totally aware of the nature of his medical problems, but knew he had not passed his D.O.T. physical.  I later found out that he had been disqualified due to cardiac problems.  He spent some time on the telephone talking to Dr. Paine about the

19

situation. When he got done, he stated that since he wasn't able to pass the physical and obtain a card, he would have to quit. He was furnished with the proper paperwork, completed and turned it in along with his badge. He did not express any desire at that time to pursue appeal or other possibilities.

At no time was I aware of any request by Mr. Webb for any accommodations due to his physical conditions. While I knew he was not happy about having to resign, he never expressed a desire to do anything but drive a truck. Even if he were to be reinstated today, he would not be allowed to drive a commercial vehicle until and unless he passed a physical and obtained a valid medical card.

As for the other drivers, each case is handle on it's [sic] own merit. The contract physician is responsible for deciding whether or not a driver is cleared. I am aware of two other full time career drivers who have had cardiac issues. They were cleared either by Dr. Paine or through subsequent appeals to drive. I am not medically qualified to explain why they were cleared and Mr. Webb was not.

(P. Ex. H)

Plaintiff disputes this proposed fact; however, he cites only to the deposition testimony reprinted above and to the declaration of Jerry Woodruff quoted above. Nothing in that evidence disputes the proposed fact. Additionally, plaintiff did not dispute fact number 10, which states that plaintiff was never a full-time career employee. Further, he did not dispute fact number 6, which states that a transitional employee is different from a full-time career employee. These facts combined with the evidence quoted above establish that proposed fact number 34 is undisputed.

35. Plaintiff believes the decision of the USPS to not find him another position was also age discrimination because Jack West was a year and a half younger than plaintiff. Jack West was born in the fall of 1939 while plaintiff was born in the spring of 1938. The USPS reassigned Jack West to another position while disallowing plaintiff a reassignment.

Plaintiff does not dispute this fact; however, in his response he states that he believes the decision of the USPS to not find him another position was age discrimination also because Raymond Lajoie was younger than plaintiff.

The evidence cited by both parties is the same and consists of plaintiff's deposition testimony which reads as follows:

Q.   Do you know how old Mr. West was at the time they found him other employment when he failed his physical?
A.   I figured Jack was in his fifties.  Knowing -- just really outright saying I know exactly how old he was, no, but I figured he was in his fifties.  I didn't know how old he was.
Q.   What is your date of birth?
A.   April 6, 1938.
Q.   So how old were you in July of 2002 when this was all going on?
A.   Take four years past that.  I was past 63 years old.
Q.   And then if I have a record here that shows that Mr. West was born on August 9, 1939, so he's about a year or so younger than you.  Does that sound about right?
A.   Yeah.
                    * * * * *
Q.   Well, as I understand, you're telling me that, you know, you were in your sixties, and they did not offer you this other employment; just seems to you they were trying to get you out the door because you were older. Is that fair?
A.   That's the way I felt.
Q.   Do your feelings about that change knowing that Mr. West, who was almost the same age you were, they did find other employment for him?
A.   They found it for him.  I felt like they were being prejudiced toward me because they didn't find it for me.
(D. Ex. A, p. 44, lines 10-25; p. 45, lines 1-3; p. 49, lines 21-25; p. 50, lines 1-7).

This evidence supports the proposed fact, but does not even mention Mr. Lajoie; therefore, plaintiff's alteration of the proposed fact cannot be considered undisputed based on the evidence plaintiff has cited.

36.  Plaintiff also believes the decision of the USPS to not find him another position was race discrimination and age

discrimination because of the feeling he had "inside" him.

Plaintiff does not dispute this fact, but rather rewrites it in his response as follows:  That Webb also believes the decision of the USPS to not find him another position was race discrimination, age discrimination *and disability discrimination because USPS took care of "them"*.

The evidence cited by both parties is the same and consists of plaintiff's deposition testimony which reads as follows:

Q.    Other than the feeling you had inside that this was being done because of your age, do you have any other thing you can point to that establishes that this is age discrimination by the post office?
A.    No more than that.

                            * * * * *

Q.    So on the race, on your race discrimination claim, it's based on the fact that you had the feeling inside and the fact that some non-African American employees were offered employment when they failed the DOT test; is that right?
A.    Yes.
Q.    And with respect to your age discrimination claim, it's both a feeling you had inside as well as the fact that these younger employees were offered jobs when they failed their DOT certification and you weren't offered other jobs?
A.    Yes.

(D. Ex. A, p. 50, lines 17-22; p. 51, lines 1-12).

This evidence supports the proposed fact, but does not even mention disability discrimination or "taking care of them".  Therefore, plaintiff's alteration of the proposed fact cannot be considered undisputed based on the evidence plaintiff has cited.

37.  Webb has no other reasons to believe or evidence that

the USPS committed race or age discrimination against him.

Plaintiff apparently disputes this fact by stating that plaintiff "has numerous other reasons to believe or evidence that the USPS committed race, age and disability discrimination against him."  He then, once again, cites only the evidence cited by defendant in support of the very fact that plaintiff disputes.

22

The parties cite the following portions of plaintiff's deposition testimony:

Q.  Any other reason, other than the fact that those two gentlemen were offered other jobs within the post office, any other reason that you believe this was race discrimination?

A.  No, not -- not inside of me, no, besides that, they did them like that and didn't do me like that.

* * * * *

Q.  So other than the fact that these two non-African American employees were offered jobs, you have no other reason to point to as to why this is race discrimination?

A.  No, I don't.

* * * * *

Q.  Anything else you think in this case shows either age discrimination or race discrimination with these decisions made by the post office?

A.  No, I can't just outside think of anything else.

(D. Ex. A, p. 47, lines 12-18; p. 48, lines 7-11; p. 51, lines 13-16).

This evidence supports the proposed fact, but does not even mention disability discrimination, does not mention any other reason or plaintiff's belief that there is another reason for believing the USPS committed race or age discrimination against plaintiff.

A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Merely denying a proposed fact without pointing to any evidence in the record does not result in a proposed fact being considered disputed for summary judgment purposes. Because defendant's citation to plaintiff's deposition testimony supports this fact, and because plaintiff has pointed to nothing in the record to dispute this fact, I find that defendant's proposed fact number 37 is undisputed.

38.  No one from the USPS ever said anything to plaintiff

that was direct evidence of race discrimination or age

discrimination.

Plaintiff apparently disputes this fact by stating that "numerous other supervisors of USPS have said things to Webb

23

that was direct evidence of race discrimination, age discrimination and disability discrimination." He then, once again, cites only the evidence cited by defendant in support of the very fact that plaintiff disputes.

The parties cite the following portions of plaintiff's deposition testimony:

Q.   Let me ask you this:  Did anyone from the post office ever say anything to you that you took to be racially discriminatory?
A.   I had some friends down there because I worked before, but not -- no.
Q.   I meant with respect to these decisions that were made by the post office in 2002.
A.   No, that come inside of me simply because of what happened.  I mean, none of my other friends that -- I had quite a few and I still work around quite a few -- they didn't encourage that to me.  It happened inside of me simply because this is the way this incident was going.

                    * * * * *

Q.   Okay.  Did anyone ever say anything to you that led you to believe that's what their thinking was?
A.   No.  That come inside me to -- upon the circumstances the way I was treated on this resignation and block me --
Q.   Mr. Meiser didn't say anything that you thought --
A.   No, no.

                    * * * * *

Q.   And as I understand you, no one from the post office ever directly told you, "We're doing this to you because you're black," or, "We're doing this to you because you're old"?
A.   Oh, no.
(D. Ex. A, p. 47, lines 19-25; p. 48, lines 1-6, 25; p. 49, lines 1-8; p. 51, lines 17-21).

This evidence supports the proposed fact, but does not even mention disability discrimination and does not mention any statement of any one supervisor or numerous other supervisors that could be considered direct evidence of discrimination.

A dispute of fact is considered genuine only if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Merely denying a proposed fact without pointing to any

24

evidence in the record does not result in a proposed fact being considered disputed for summary judgment purposes. Because defendant's citation to plaintiff's deposition testimony supports this fact, and because plaintiff has pointed to nothing in the record to dispute this fact, I find that defendant's proposed fact number 38 is undisputed.

The following proposed facts are included in plaintiff's response. Any numbered fact without reference to the record has been offered by plaintiff and is undisputed by defendant.

25. On May 30, 2002, Dr. A. Jan McGhie, M.D., conducted a stress test on plaintiff and found that no "high risk" scintigraphic findings were identified.

26. In plaintiff's medical examination report of July 18, 2002, plaintiff stated he had bypass surgery in March 2000 and denied any other surgery.

27. In the July 18, 2002, exam, USPS Medical Examiner Hong Fei Li, M.D., temporarily disqualified plaintiff due to abnormal stress test. On August 16, 2002, plaintiff was evaluated as "does not meet standards" by J. Ralph Payne, M.D., Senior Facility Medical Manager.

28. Plaintiff received a basic score of 100.0 on his entrance test for tractor-trailer operator on July 18, 2002.

29. On July 22, 2002, Dr. O'Keefe sent Dr. Li a second letter saying that the plaintiff was seen in his office on April 23, 2002, and does not have any recurring pain. Plaintiff underwent nuclear stress testing on May 30, 2002. Only a small localized area of ischemia was noted with scar from previous

25

myocardial infarction. Dr. O'Keefe's recommendation was to keep plaintiff as active as possible.

30. Dr. O'Keefe sent a letter to Dr. Li on July 25, 2002, that in his opinion plaintiff was qualified to drive an 18-wheeler.

31. On July 25, 2002, plaintiff's cardiologist, Dr. James O'Keefe, M.D., wrote a letter to Dr. Li notifying him that plaintiff was qualified to drive an 18-wheeler truck on the highway in terms of his cardiovascular function and current status.

The following proposed undisputed facts from plaintiff's response are not supported by any evidence presented by plaintiff[1], nor has the defendant stated that it does not dispute these facts. Therefore, none of the following facts will be

_____

[1]Plaintiff did not include any exhibits with his response; however, he added his own proposed undisputed facts with citations. I entered an order giving plaintiff until March 2, 2007, to provide exhibits corresponding with his citations to the record. On March 2, 2007, plaintiff filed his exhibits, indicating that his citations were to his personnel file. Plaintiff stated that "All documents in the file have been Bates stamped US 001-US 394." He then listed the Bates numbers of the documents he cited in his response. However, none of the documents provided by plaintiff have Bates numbers on them. Instead, I was required to review every document presented and match the documents by the dates on the documents, as there was no other way to identify the documents cited by plaintiff. Plaintiff's proposed undisputed facts numbered 46 through 48 are supported by a reference only to "Plaintiff Rule 26 Discovery". I have been unable to find any document in the exhibits provided by plaintiff on March 2, 2007, which have dates corresponding to the dates of the proposed undisputed facts, or which in any way deal with the proposed undisputed facts numbered 46 through 48.

26

considered for purposes of this summary judgment motion.

46. Plaintiff took a Rest/Stress Dipyridamole Rb-82 Emission Tomography Report on September 24, 2003.

47. Plaintiff took and passed a medical examination report on October 9, 2003.

48. Plaintiff took and passed a second Rest/Stress Exercise Test on July 24, 2006.

Not only are these proposed undisputed facts unsupported by the record, they are irrelevant. The adverse employment action of which plaintiff complains occurred on July 30, 2002. Any medical exams that were completed in 2003 or 2006 are not relevant to anything that occurred on July 30, 2002.

## IV. BURDEN-SHIFTING FRAMEWORK

Where there is no direct evidence of age or racial discrimination, the burden-shifting scheme developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. "Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Quick v. Wal-Mart Stores, Inc., 441 F.3d 606, 609 (8th Cir. 2006), quoting Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). For example, in U.S. E.E.O.C. v. City of Independence, Mo., 471 F.3d 891, 895 (8th

27

Cir. 2006), the defendant in an age discrimination case made the following statements:

- "I didn't know you were that old"

- "Well, you're of retirement age, Richard, you're over 60. You can't draw donated leave time."

- Plaintiff "was informed that he was ineligible to utilize the Program due to his age."

These statements were all found to be direct evidence of age discrimination.  Id.  See also EEOC v. Liberal R -II School Dist., 314 F.3d 920, 923 (8th Cir. 2002) (direct evidence may include evidence of actions or remarks of the employer that reflect a discriminatory attitude); Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 452 (8th Cir. 1997); Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993).

This case is similar to Hanebrink v. Brown Shoe Co., 110 F.3d 644, 646, 647 (8th Cir. 1997), where the plaintiff himself testified that no one at the employer said anything that suggested that he was discriminated against because of his age. Here plaintiff testified during his deposition that no one from the Postal Service ever said anything that made plaintiff think the decision of the USPS was based on his race or age.  (See undisputed fact number 38).

Based on the above, I find that there is no direct evidence of discrimination in this case.  Therefore, plaintiff must first

28

establish a prima facie case of discrimination.  Once the prima facie case is established, a legal presumption of unlawful discrimination is created.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).  The burden of production then shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action.  If the defendant comes forward with a non-discriminatory explanation, the presumption of unlawful discrimination drops from the case.  <u>Id</u>. at 511.  The burden of production then returns to the plaintiff to rebut the defendant's explanation by showing that the proffered reason is actually a pretext for intentional discrimination.  <u>Id</u>. at 508.  The burden of proof remains with the plaintiff at all times.  <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).

**A.  *RACIAL DISCRIMINATION***

In order to establish a prima facie case of racial discrimination under Title VII, plaintiff must establish that (1) he was a member of a protected group, (2) he was meeting the legitimate expectations of his employer, (3) he suffered an adverse employment action, and (4) similarly-situated employees who were not members of the protected class received different treatment.  <u>Richardson v. Sugg</u>, 448 F.3d 1046, 1060 (8th Cir. 2006); <u>Box v. Principi</u>, 442 F.3d 692, 696 (8th Cir. 2006).

29

Defendant argues that plaintiff is unable to establish the fourth element of a prima facie case of race discrimination because he cannot prove that similarly-situated employees who were not members of the protected class received different treatment. Plaintiff has pointed to Jack West and Raymond Lajoie as similarly-situated employees who were offered other assignments with the USPS when they failed their DOT physicals, while plaintiff was not offered another assignment after he failed his DOT physical. The undisputed evidence, however, is that neither Jack West nor Raymond Lajoie were similarly situated.

The test for determining whether employees are similarly situated to a plaintiff is a rigorous one. E.E.O.C. v. Kohler Co., 335 F.3d 766, 7756 (8th Cir. 2003). The plaintiff must show that he and those employees outside of his protected group were similarly situated in all relevant respects. Wheeler v. Aventis Pharms., 360 F.3d 853, 858 (8th Cir. 2004).

The undisputed evidence here establishes that plaintiff was a transitional employee, which differs from a full-time career employee. Jack West and Raymond Lajoie were full-time career employees. Under the collective bargaining agreement, noncareer employees may not be reassigned to other positions within the USPS. Therefore, Jack West and Raymond Lajoie were entitled under the collective bargaining agreement to be reassigned to

30

other positions while plaintiff, as a noncareer employee, was prohibited from being reassigned to another position.

In Equal Employment Opportunity Commission v. Trans States Airlines, Inc., 462 F.3d 987 (8th Cir. 2006), a probationary pilot of Indian descent was terminated for misconduct while other pilots of other racial backgrounds were not. The court found that because the terminated pilot was only a probationary employee and "[t]he rights [to progressive discipline] are not extended to probationary pilots" by the airline's collective bargaining agreement, the probationary pilot could not point to non-probationary pilots as similarly-situated employees. See also Herr v. Airborne Freight Corporation, 130 F.3d 359 (8th Cir. 1997) (probationary drivers were not protected by the collective bargaining agreement, and similarly-situated employees cannot be employees who are protected by the collective bargaining agreement); Riser v. Target Corp., 458 F.3d 817, 822 (8th Cir. 2006) (other employees who were not trainees were not similarly situated with employee who was a trainee), cert. denied, --- S. Ct. ---, 2007 WL 559911 (February 26, 2007).

Because plaintiff has offered no direct evidence of race discrimination and plaintiff has failed to establish a prima facie case of race discrimination, defendant's motion for summary judgment on count one, race discrimination in employment, will be granted.

31

**B.    *AGE DISCRIMINATION***

In order to establish a prima facie case of age discrimination under Title VII, plaintiff must establish that (1) he was at least 40 years of age, (2) he was qualified for a particular job opportunity, (3) he did not receive the job opportunity, and (4) the employer instead offered the job opportunity to a person substantially younger so as to permit an inference of discrimination. <u>Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., Inc.</u>, 444 F.3d 961, 965 (8th Cir. 2006). <u>See</u> <u>also</u> <u>Lewis v. St. Cloud State University</u>, 467 F.3d 1133, 1136 (8th Cir. 2006).

Plaintiff is unable to establish the second prong of the prima facie case for age discrimination because he cannot establish that he was qualified for a particular job opportunity. As discussed above, the undisputed evidence establishes that since plaintiff was a noncareer employee, he was not entitled to be reassigned to another position once he failed his DOT physical.

Plaintiff is also unable to establish the fourth prong of the prima facie case for age discrimination because he cannot establish that his employer offered a job opportunity a "substantially younger" person.

Prior to the Supreme Court's decision in <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308 (1996), there was

32

a question as to whether the plaintiff could satisfy his burden by establishing that a job offer was given to a person not in the protected class (i.e., if the plaintiff was 41 and the job offer was given to someone who was 39), or whether the plaintiff was prevented from establishing a prima facie case merely because the job offer was given to someone within the protected class (i.e., if the plaintiff was 65 and the job offer was given to someone who was 41). The Supreme Court held that "whether a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." Id. at 313.

Plaintiff points to Jack West as a person who was offered reassignment after he failed his DOT physical; however, Mr. West was one and one-half years younger than plaintiff. Plaintiff had just turned 64 when he resigned, and Mr. West was nearing his 63rd birthday. There is no evidence, offered by either party, of the age of Mr. Lajoie.

It is clear that one and one-half years is an insufficient age difference to satisfy the fourth prong of the prima facie case of age discrimination. Wittenburg v. American Express Financial Advisors, Inc., 464 F.3d 831, 840 (8th Cir. 2006) (six-year age difference not enough); Schlitz v. Burlington Northern Railroad, 115 F.3d 1407, 1413 (8th Cir. 1997) (five-year age

33

difference not enough).

Because plaintiff has not presented any direct evidence of age discrimination, and because he cannot show that he was qualified for a reassignment to another position, and because he cannot show that the reassignments were given to an individual significantly younger than plaintiff, defendant's motion for summary judgment on count two, age discrimination in employment, will be granted.

## C.    *LEGITIMATE NON-DISCRIMINATORY REASON FOR EMPLOYMENT ACTION*

Even if plaintiff had established a prima facie case of discrimination, the result would be the same. When the defendant comes forward with a non-discriminatory explanation, any presumption of unlawful discrimination drops from the case. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). The burden of production then returns to the plaintiff to rebut the defendant's explanation by showing that the proffered reason is actually a pretext for intentional discrimination. Id. at 508.

In articulating a legitimate nondiscriminatory reason, the burden on the employer is the burden of production, not persuasion. Cherry v. Ritenour School District, 361 F.3d 474, 478 (8th Cir. 2004). The employer is not even required to establish the nondiscriminatory reason by a preponderance of the evidence. Stallings v. Hussmann Corp., 447 F.3d 1041, 1052 (8th Cir. 2006). To satisfy this "minimal" burden, an employer need

34

not prove that the articulated reasons actually motivated its conduct but, rather, the employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. Klimczak v. Shoe Show Co., 420 F. Supp. 2d 376, 383 (M.D. Pa. 2005). See also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (McDonnell Douglas places a burden on employers only to produce "reasons for its action which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action").

Defendant presented evidence that plaintiff did not pass his DOT physical, a requirement for having a commercial driver's license. The defendant presented evidence that without a commercial driver's license, plaintiff was not qualified to work as a tractor-trailer driver for the United States Postal Service under the DOT regulations. Finally, defendant presented evidence that plaintiff was not entitled, under the collective bargaining Agreement, to be offered a different position within the Postal Service.

This evidence presents a legitimate, non-discriminatory reason for the adverse employment action of which plaintiff complains. The burden then becomes plaintiff's to establish that the proffered reason is a pretext for unlawful discrimination. Plaintiff has failed to meet his burden under this final prong of

35

the McDonnell Douglas analysis. Plaintiff pointed to two individuals who were treated differently; however, the undisputed facts establish that those individuals were protected by the collective bargaining agreement, and plaintiff was not due to his position as a noncareer employee. Plaintiff has offered no other evidence of racial discrimination or age discrimination.

## V.   CONCLUSION

Based on the above undisputed facts and the law as discussed in section IV, I find that there remain no genuine issues of material fact, and that defendant is entitled to summary judgment on all counts. Therefore, it is

ORDERED that defendant's motion for summary judgment is granted.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
March 5, 2007

Case 4:04-cv-00964-REL   Document 32   Filed 03/05/07   Page 36 of 36